# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

BEVERLY J. BRACKSON, et al.,         )
                                      )
        Plaintiffs,                   )
                                      )
vs.                                   )   No. 05-0801-CV-W-FJG
                                      )
DOLGENCORP,                           )
                                      )
        Defendant.                    )

## ORDER

Currently pending before the Court is Plaintiffs' first Motion to Amend Complaint (Doc. # 24), Defendant's Motion for Extension of Time to State Affirmative Defenses to Each Incident Alleged by Plaintiffs (Doc. # 30), Defendant's Motion to Compel (Doc. # 41); Defendant's Motion to Strike Jury Demand (Doc. # 49); Plaintiffs' Cross Motion for a Protective Order (Doc. # 54), Defendant's Motion for Leave to Amend Answer to Add Affirmative Defense (Doc. # 67); Plaintiffs' Motion for Extension of Time to Complete Discovery and Related Deadlines (Doc. # 68), Plaintiffs' Motion to Amend Complaint (Doc. # 69); Defendant's Motion for Protective Order as to Plaintiffs' Written Discovery Requests (Doc. # 71), Defendant's Motion for Sanctions (Doc. # 72), Defendant's Motion for Summary Judgment (Doc. # 79), Plaintiffs' Motion to Extend Discovery (Doc. # 90), Defendant's Motion to Exclude Plaintiffs' Witnesses and Exhibits Not Identified or Produced in Discovery (Doc. # 101), Defendant's Motion to Amend/Correct Defendant's Final Witness List (Doc. # 108), the parties' Motions in Limine (Docs. 112, 115, 116, 117, 118 and 119) and plaintiffs' Motion for Leave to File Suggestions in Opposition to Defendant's Motion in Limine Out of Time (Doc# 123).

## I. BACKGROUND

Plaintiffs Beverly Brackson and William Craddock both worked for defendant Dolgencorp. Plaintiff was hired in September 2003 to manager Dollar General Store (No. 6038) in Grandview, Missouri. William Craddock was hired as an Assistant Store Manager in October 2003. Mr. Craddock worked at the Grandview store until he attended Store Manager training in March 2004. Dolgencorp terminated Ms. Brackson's employment because it was believed she allowed non-employees (including family members) to work off the clock in violation of company policy. In her complaint, Ms. Brackson claims race discrimination and retaliation under the Missouri Human Rights Act. Initially, Ms. Brackson also claimed a violation of the Fair Labor Standards Act, but she has since chosen to withdraw that claim as she is pursuing that claim in another forum. Mr. Craddock has also claimed racial discrimination under the Missouri Human Rights Act.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment

"must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). "[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury might return a verdict in his favor. If he does, there is a genuine issue of fact that requires a trial." Anderson, 477 U.S. at 257. "The Eighth Circuit has held that summary judgment should seldom be used in employment-discrimination cases. . . . Motions for summary judgment in employment discrimination cases are to be carefully scrutinized, due to the inherently factual nature of the inquiry and the factual standards set forth by Congress." Van Orden v. Wells Fargo Home Mortgage, Inc., No. 4:04-CV-00558-JEG, 2006 WL 2138357 (S.D.Iowa Aug. 1, 2006)(internal citations and quotations omitted).

### III. DISCUSSION

**A. Discovery Motions**

**1. Motions to Amend**

Plaintiffs filed a Motion for Leave to File Amended Complaint and to Join Additional Party (Doc. # 24). Plaintiffs also filed a Substituted Motion for Leave to File Amended Complaint (Doc. # 69). In their initial motion to amend, plaintiffs sought to add Dolgencorp as an additional corporate defendant. They also sought to add a claim for constructive discharge for plaintiff Craddock. The initial motion was filed three weeks past the deadline provided in the Scheduling and Trial Order. Defendant opposes the motion citing the untimeliness of the filing and the fact that a constructive

discharge is an entirely different claim than a voluntary separation claim. Defendant argues that the allowance of such a new claim this late in the case would cause undue prejudice. Additionally, defendant states that Dolgencorp, Inc. should not simply be added, but should be substituted for Dollar General Corporation.

The Court agrees and finds that there is no reason to allow the addition of a constructive discharge claim at this stage of the case, particularly when the request was not made until three weeks after the deadline for filing amended pleadings. The Court will allow plaintiffs to substitute Dolgencorp, Inc. as the proper party defendant. Accordingly, plaintiffs' initial Motion to Amend is hereby **GRANTED** in **PART** and **DENIED** in **PART** (Doc. # 24).

Plaintiffs in their Substituted Motion to Amend state that plaintiffs have dropped Count II, the Fair Labor Standards Act Count, because Ms. Brackson has opted into a class action lawsuit pending in Alabama under the Fair Labor Standards Act. Plaintiffs state that Count II is no longer a claim in this lawsuit. However, plaintiffs also seek to add claims to their Complaint. Ms. Brackson seeks to add a claim for sexual harassment and also a claim for violation of Missouri's Whistle Blower law. Mr. Craddock is seeking damages subsequent to March 19, 2004, which were not previously pled. Plaintiffs' substituted Motion to Amend was filed on April 7, 2006, three months after the January 7, 2006 deadline provided in the Scheduling and Trial Order. The only reason that plaintiffs give for their delay in filing the Motion to Amend is that their counsel was unable to meet this deadline and they initially sought a lengthy period of time for amendments based on facts which would be revealed in discovery.

Defendant does not oppose dismissal of the FLSA claim, but does oppose the other additions to the Complaint. Defendant states that this motion which was filed days

4

before the close of discovery would completely change the nature of the case and would require the parties to engage in additional discovery.  Defendant also notes that plaintiffs' counsel offered no justification for failing to timely amend the Complaint and states that this information has been known to plaintiffs and their counsel since the case was first filed.

Plaintiffs cite Fed.R.Civ.P. 15(a) as the standard for analyzing motions to amend. However, when the deadline for amending pleadings has already passed, the motion should instead be analyzed pursuant to Fed.R.Civ.P. *16(b)*.  Luigino's Inc. v. Pezrow Companies, Inc., 178 F.R.D. 523, 525 (D.Minn. 1998).  Fed.R.Civ.P. 16(b) provides in part that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . .."  Additionally, Local Rule 16.3 states that "[a] deadline established by a scheduling order will be extended only upon a good cause finding by the Court."  As one court recently noted:

> The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'  Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes–1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D.Conn. 1998).  It hardly bears mention, therefore, that 'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.' Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D.Minn. 1998).

Archer Daniels Midland Co. v. Aon Risk Services Inc. of Minnesota, 187 F.R.D. 578, 581-82 (D. Minn. 1999).  See also, Scheidecker v. Arvig Enterprises Inc., 193 F.R.D. 630 (D.Minn. 2000).   In the case of In re Milk Products Antitrust Litigation, 195 F.3d 430 (8th Cir. 1999), cert. denied, sub nom., Rainy Lake One Stop, Inc. v. Marigold Foods, Inc., 529 U.S. 1038 (2000) the Eighth Circuit considered whether a district court had

abused its discretion by requiring a party to show good cause under Rule 16(b), rather than utilizing the more liberal standard of Rule 15(a). The Eighth Circuit stated:

> When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order. See Johnson v. Mammoth Recreations Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). 'If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.' Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998).

Id. at 437-38.

The Court finds that plaintiffs have given no reason, let alone provided "good cause" for failing to file a Motion to Amend their Complaint or even filing a Motion for Extension of Time before the expiration of the deadline. The claims that plaintiffs seek to add were known to plaintiffs well before the expiration of the deadline. Accordingly, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Leave to File Amended Complaint (Doc. # 24) and **DENIES** Plaintiffs' Substituted Motion for Leave to File First Amended Complaint (Doc. # 69). As there was no opposition to plaintiffs' Motion to Dismiss Count II, the Court hereby **DISMISSES** Count II (Fair Labor Standards Act claim).

Defendant also filed a Motion for Leave to Amend its Answer to Add Affirmative Defense of Collateral Estoppel (Doc. # 67). This affirmative defense was in response to plaintiff Brackson's revelation that she had opted into a FLSA class action pending in Alabama. However, as the Court has now dismissed this claim, defendant's Motion to Amend its Answer is unnecessary. Accordingly, the Court hereby **DENIES** Defendant's Motion for Leave to Amend Answer to Add Affirmative Defense as **MOOT** (Doc. # 67).

**2. Motions to Extend Discovery**

On April 7, 2006, four days before the close of discovery, plaintiffs filed a Motion seeking an extension of time to complete discovery. Plaintiffs' counsel states that while plaintiffs have submitted to seven hours of depositions and have had voluminous records depositions, plaintiffs have not had a chance to conduct any discovery. Plaintiffs state that as they must pay for the discovery themselves, the discovery must be spaced out to accommodate their ability to pay for it and would have to spaced out to accommodate the schedule of counsel. Defendant opposes the Motion, stating that the Scheduling and Trial Order in this case was entered on November 1, 2005. Defendant notes that it served its initial disclosures on November 8, 2005 and served written discovery on both plaintiffs on November 15, 2005. Defendant notes that plaintiffs did not even serve written discovery until March 24, 2006, two and one-half weeks before the close of discovery. Defendant states that plaintiffs are seeking additional time despite their failure to timely and diligently prosecute their claims. Defendant notes that the plaintiffs have violated the Court's Scheduling and Trial Order by failing to proceed with discovery in a timely manner, submitting discovery at the last minute and by propounding discovery too late for the opposing side to respond to the close of discovery. Defendant also notes that plaintiffs did not even submit their designations of discriminatory incidents until the Court issued an Order to Show Cause. Counsel for defendant states that plaintiffs' counsel did not even request any depositions until March 23, 2006, two weeks before the close of discovery. Defendant's counsel states that despite this short notice, she attempted to make witnesses available to plaintiffs' counsel before the close of discovery. Defendant's counsel also states that she offered to make corporate witnesses available to plaintiffs' counsel after the close of discovery, but that plaintiffs' counsel did not respond to her offer.

On June 19, 2006, plaintiffs' counsel filed a second Motion to Re-Extend Discovery (Doc. # 90). Plaintiffs again state that they have not had the opportunity to take any depositions and have not received answers to their discovery requests or requests for documents. Plaintiffs' counsel reiterates the same reasons advanced in his earlier motion, and provides no explanation as to why this discovery was not sought earlier. Plaintiffs also ask the Court to postpone ruling on the summary judgment motion until discovery is complete pursuant to Fed.R.Civ.P. 56(f). Plaintiffs then list fourteen different types of documents that they need from the defendants. Plaintiffs state that these are "basic documents, relevant to this case, required to be kept by defendant's own policies, and should have already been released in the course of discovery." (Plaintiffs' Motion to Re-Extend Discovery, p. 6).

Defendant states that allowing plaintiffs to re-open discovery, add amended claims, suspend the dispositive motion deadline and delay the trial setting would reward the plaintiffs for their failure to timely prosecute this action. The Court agrees. The Scheduling and Trial Order states:

> 1. **DISCOVERY** shall close as of April 11, 2005. Close of discovery means that all discovery, including the taking of depositions, shall be completed not simply submitted on the date specified by this paragraph. *Any last minute discovery submitted too late for the opposing side to timely discover may be stricken.* **Counsel should also note that the Court expects discovery to proceed in a timely manner.** *The filing of a dispositive motion does not preclude the parties from conducting discovery.*

In <u>Bradford v. DANA Corp.</u>, 249 F.3d 807 (8th Cir. 2001), plaintiff alleged that the Court erred in denying her requests to modify the Case Management Order to permit her additional time to respond, conduct discovery and to move the trial date. The Eighth Circuit stated:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. . . . As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order 'shall not be modified except upon a showing of good cause and by leave of the district judge.' Thus, a moving party must first make the requisite showing. Even then the district court retains jurisdiction as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them. . . . The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . The existence or degree of prejudice to the party opposing the modification and other factors may also affect the decision. . . . In this case, however, we have no need to explore beyond the first criterion because the record clearly demonstrates the Bradford made only minimal efforts to satisfy the CMO's requirements.

Id. at 809 (internal citations and quotations omitted). Similarly, in Marmo v. Tyson Fresh Meats, Inc., No. 05-1906, 05-3649, 2006 WL 2165734, (8th Cir. Aug. 3, 2006), the Court observed, "[a]dherence to progression order deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.' Fed.R.Civ.P. 1."

In the instant case, plaintiffs did not submit their written discovery requests until March 24, 2006 - March 28, 2006. Plaintiffs' counsel did not even request depositions of the defendant's witnesses until March 23, 2006. Obviously, this was not enough time to allow defendant to schedule six to seven depositions, of individuals located in different cities. It was also insufficient time to allow defendant to respond to the discovery requests, as under the Federal Rules, they have thirty days to respond. Despite plaintiffs' late request for depositions, defendant made a good faith effort to attempt to schedule the depositions of its witnesses, but received no communication from plaintiffs' counsel as to whether he wished to depose any of these witnesses. The Court finds that plaintiffs' counsel made almost no effort to comply with the

deadlines in the Scheduling Order until the last minute. Therefore, the Court finds that plaintiffs' counsel has not demonstrated good cause for extending the discovery deadlines.

Likewise, in his second motion to extend the deadlines, plaintiffs' counsel cites to Fed.R.Civ.P. 56(f). One court has noted that "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." United States v. Kitsap Physicians Service, 314 F.3d 995, 1000 (9th Cir. 2002). The Court in Liberty Life Assurance Co. v. Estate of Barnett, No. 1:04CV0001 TCM, 2005 WL 1662257 (E.D. Mo. July 8, 2005), stated:

> The request for a continuance under Rule 56(f) must be accompanied by an affidavit showing what specific facts further discovery might uncover. . . . A Rule 56(f) motion, however, is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.

Id. at *8 (internal citations and quotations omitted). In the instant case, plaintiffs' counsel did not attach an affidavit. He did provide a list of documents that he claims the defendant has not released, but he does not explain how these documents might assist in the plaintiffs' case. The Court therefore finds no reason for extending the discovery deadlines based on plaintiffs' request pursuant to Fed.R.Civ.P. 56(f). Therefore, the Court hereby **DENIES** plaintiffs' Request for Extension of Time to Complete Discovery and Related Deadlines (Doc. # 68) and also **DENIES** plaintiff's Motion to Re-Extend Discovery and Related Deadlines (Doc. # 90).

**B. Motion for Summary Judgment**

Plaintiffs' Missouri Human Rights Act discrimination and retaliation claims are analyzed under the burden shifting standard enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "Under McDonnell Douglas, the plaintiff first is required to establish a prima facie case of discrimination. The burden of production then shifts to defendant to assert a legitimate reason for the allegedly discriminatory action. . . . If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the asserted legitimate reason was merely a pretext for a discriminatory action." Wilcoxon v. Ramsey Action Programs, Inc., No. 04-92 (JRT/FLN), 2005 WL 2216289, *5 (D.Minn. Sept. 12, 2005)(internal citations omitted).

**1. Beverly Brackson's Claims**

**a. Racial Discrimination**

To establish a prima facie case of race discrimination plaintiff must show that: "(1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently." Shanklin v. Fitzgerald, 397 F.3d 596 (8th Cir. 2005)(internal citations and quotations omitted).

Ms. Brackson alleges a number of discriminatory incidents in her Complaint[1]. However, the three most significant ones include her written counseling in May 2004,

---

[1] The other miscellaneous allegations of discrimination include the alleged denial of one or two days of vacation, a small increase in her stock and inventory preparation, not being able to select the merchandise she received and store visits from supervisors. In Wedow v. City of Kansas City, Mo., 442 F.3d 661, 671 (8th Cir. 2006), the Court stated, "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. . . Mere inconvenience without any decrease in title, salary, or benefits or that results only in minor changes in working conditions does not meet this standard." (internal citation and quotation omitted).

11

her paid suspension in June 2004 and her termination in November 2004.  Defendant notes however that written counseling and paid suspension have been found not be to adverse employment actions.  In Powell v. Yellow Book USA, Inc., the Court stated, "We have held that formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII." Id. at 1079, citing, Spears v. Missouri Dep't of Corrections & Human Res., 210 F.3d 850, 854 (8th Cir.2000) (en banc).  Similarly, in Singletary v. Missouri Dep't. of Corrections, 423 F.3d 886, 892 (8th Cir. 2005), the Court found that being placed on administrative leave did not qualify as an adverse action. Ms. Brackson has not shown how either her counseling or her paid suspension led to a change in either her compensation, responsibilities or any other benefits.  Therefore, the Court finds that these do not qualify as adverse employment actions.

Plaintiff's termination in November 2004 does qualify as an adverse action, but the Court finds that plaintiff has still failed to meet the other two prongs of the prima facie test.  Plaintiff cannot show that she was meeting her employer's legitimate job expectations, nor can she show that similarly situated individuals were treated differently.  Ms. Brackson was not meeting her employer's legitimate expectations, because she had been counseled in May 2004 for failing to complete paperwork in a timely manner, for failing to report shortages and to take corrective action regarding shortages.  Additionally, she had been suspended in June 2004, because she failed to follow a District Manager's directions to terminate an employee and she left the employee in the store alone during a merchandise delivery in violation of company policy.  Finally, she was terminated in November 2004, because she again violated company policy by working non-employees in the store off the clock.   Plaintiff does not

12

dispute that she was counseled and disciplined and ultimately terminated.

Plaintiff also cannot show that similarly situated white mangers were treated differently that she was. She argues in opposition only that white managers had multiple reasons for termination and more lengthy investigation periods. Plaintiff does not dispute that these white managers were terminated for working employees off the clock, only that there may have been other reasons as well that justified their terminations. However, this only goes to show that these individuals were not similarly situated to herself and does not prove that there were white managers who committed similar infractions who were not terminated. In Menyweather v. Mall of America Inc., No. Civ. 03-6113JNEJGL, 2005 WL 1324093 (D. Minn. June 3, 2005), the Court stated, "[plaintiff] has the burden of producing facts that similarly situated, non-African-American employees, were treated differently. . . . The employee used for this comparison must be similarly situated in all relevant aspects; specifically, the employee must have engaged in the same conduct without any mitigating or distinguishing circumstances." Id. at *2 (internal citations omitted). Plaintiff has not come forward with any evidence to establish this fact.

Plaintiff does try to create an issue of fact by offering hand written notes from three individuals who were at the store on the date of her termination in order to show that defendant was attempting to fabricate evidence and she was not in fact working employees off the clock. In these notes, the individuals state that they were told by management that they needed to make statements indicating that Ms. Brackson was working her daughters off the clock. If they did not provide these statements, management told them they could lose their jobs. However, these notes are not memorialized in affidavits and at least one of the notes contains hearsay and is undated

13

and unsigned. However, the real issue is not whether plaintiff was or was not working non-employees off the clock, instead, "the issue is whether [defendant] conducted a thorough investigation of the . . . incident and whether it made credibility determinations reasonably and in good faith." Pope v. ESA Services, Inc., 406 F.3d 1001 (8th Cir. 2005). See also, Euerle-Wehle v. United Parcel Service, Inc., 181 F.3d 898, 900 (8th Cir. 1999)("Whether UPS *correctly* concluded that [plaintiff] had committed serious violations of company policy that warranted her termination is not material, because UPS acted reasonably and in good faith in its investigation."); Rogers v. U.S. Bank, N.A., 417 F.3d 845 (8th Cir. 2005)("issue is whether U.S. Bank conducted a thorough investigation and whether it made credibility determinations reasonably and in good faith."). The Court finds that defendant did conduct a thorough investigation, three individuals, Latreash Givens, Takisha Bledsoe and Art Russell, all reported to management that plaintiff was working non-employees off the clock. Additionally, both Galen Kueck and Todd Wright observed suspicious individuals in the store who left when Kueck and Wright confronted Ms. Brackson about them. Thus, the Court finds that plaintiff has failed to establish that similarly situated employees were treated differently than she was. Because plaintiff has failed to establish these two prongs of the prima facie test, the Court finds that plaintiff has failed to establish a prima facie claim of race discrimination with regard to her termination.

**b. Retaliation**

In Van Orden v. Wells Fargo Home Mortgage, Inc., No. 4:04CV00558-JEG, 2006 WL 2138357 (S.D.Iowa Aug. 1, 2006), the Court stated,

> There are three elements to a prima facie retaliation case. The plaintiff must demonstrate that he or she took part in protected conduct, that he or she was subjected to an adverse employment action, and that there exists

14

> a causal nexus between the protected conduct and the adverse action. . . . The plaintiff's burden at the prima facie case stage of the analysis is not onerous, and a minimal evidentiary showing will satisfy this burden of production. . . . Still, there must be some showing beyond conclusory allegations.

Id. at *7 (internal citations and quotations omitted).

Plaintiff claims that her calls to Kathleen Guion, Executive Vice-President for Store Operations and her calls to the Employee Response Center ("ERC") constituted protected activity. However, defendant argues that there was no causal connection between her protected activity and her termination. Defendant also notes that the individuals who terminated Ms. Brackson's employment were not the same individuals who plaintiff was complaining about. Galen Kueck and Tammy Hammond-Loth terminated plaintiff. Kueck was not Brackson' district manager at the time she made the calls to the ERC Center and she never complained to the company about Kueck. Plaintiff also makes no claims against Hammond-Loth.

Plaintiff states in her opposition that she called the ERC in May and June 2004. She also states that on November 1, 2004, she and other defendant employees and managers participated in a conference call with Paul Pierce of the Missouri Commission on Human Rights. Plaintiff argues that it was on November 4, 2004, that Kueck and Hall threatened employees at her store that they would lose their jobs if they did not state that she was working non-employees off the clock. Even assuming that plaintiff can establish a prima facie case of retaliation, the defendant has advanced a legitimate, non-discriminatory reason for her termination - a violation of company policy. As the Court noted in Shanklin v. Fitzgerald, 397 F.3d 596 (8th Cir.), cert. denied, 126 S.Ct. 807 (2005), "[i]f the defendant makes this showing, the plaintiff must demonstrate the defendant's proffered reason was a pretext for illegal retaliation." Id. 603-04 (internal

citations and quotations omitted). In the instant case, plaintiff has come forth with no evidence that shows that defendant's termination of her was not because she violated the policy of working non-employees off the clock, but was instead because she had engaged in protected activity. Accordingly, the Court hereby **GRANTS** defendant's Motion for Summary Judgment on Ms. Brackson's retaliation claim.

### 2. William Craddock's Claim

To establish a prima facie case of race discrimination in a failure-to-promote case, plaintiff must show: "(1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) a similarly situated candidate, not part of the protected group, was hired for the position instead." Pope, 406 F.3d at 1007.

Defendant argues that Craddock cannot establish a prima facie case of discrimination because he cannot meet either the third or fourth criteria. Todd Wright, interim District Manager at the time, enrolled Craddock in Store Manager Training on or about February 13, 2004. This was only four months after Craddock had been hired. Craddock attended training from March 1 through March 19, 2004. District Manager Todd Henningsen planned to promote Craddock to manager of the Raymore store, assuming that certain promotions went through. Henningsen began acting as interim Regional Manager and Wright began acting as interim District Manager in January 2004, and they anticipated that they would be permanently promoted to these positions, which would create an opening for a store manager. Shortly before Store Manager training began, management learned that the manager of the Bannister store was quitting, which would create another store manager opening. Defendant then interviewed and hired Dan Ghumm, anticipating that he would fill the second opening at

the Bannister store. However, the promotions did not occur and thus, only one store manager position was available. As a result, Henningsen arranged for Craddock and Ghumm to co-manage the store until another manager position could be located for Craddock. Craddock was told that he would be paid a Store Manager's salary, and he was paid as such. His job title was changed to Store Manager. Henningsen asked Craddock if the temporary arrangement would be acceptable while he was on vacation and Craddock did not indicate that it would be a problem. However, after only working a few hours at the Bannister store, Craddock became dissatisfied with the situation and refused to return. He failed to either call or show up for work for three consecutive days. Defendant's policy is that any employee who is absent without notice or authorization for three or more days will be considered to have abandoned their job unless the employee can provide evidence of extenuating circumstances.

Craddock also claims that he was discriminated against because defendant hired a white male to manage the store at 75th & Wornall. However, defendant notes that the person who was hired, Jeremy Pence, had extensive managerial experience. Mr. Pence had previously worked for QuikTrip, which Henningsen believed had an excellent training program for managers and had a strong emphasis on customer service. At the time that Pence assumed the Manager position at the Wornall store, Craddock had only been with the company for three weeks and had not yet attended manager training. Thus, defendant argues that Craddock cannot establish a prima facie case of discrimination with regard to this claim because he was not qualified.

The Court agrees and finds that Craddock cannot establish a prima facie case of discrimination with regard to either manager's position. As to the position at 75th & Wornall, Craddock cannot show that he was qualified for this position. With regard to

the position at the Bannister store, it is undisputed that defendant made him a co-manager of that store. His title and pay were changed and defendant informed him that his position as a co-manager was only temporary. However, Craddock decided that this was unacceptable, despite his previous statement to Henningsen that it was acceptable and refused to return. Thus, Craddock's claim with regard to this position also fails as he cannot show that he was rejected, because in fact defendant promoted him to a management position. Therefore, the Court **GRANTS** defendant's Motion for Summary Judgment on plaintiff William Craddock's discrimination claim.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiffs' first Motion to Amend Complaint (Doc. # 24), **DENIES as MOOT** Defendant's Motion for Extension of Time to State Affirmative Defenses to Each Incident Alleged by Plaintiffs (Doc. # 30), **DENIES as MOOT** Defendant's Motion to Compel (Doc. # 41); **DENIES as MOOT** Defendant's Motion to Strike Jury Demand (Doc. # 49); **DENIES** Plaintiffs' Cross Motion for a Protective Order (Doc. # 54), **DENIES as MOOT** Defendant's Motion for Leave to Amend Answer to Add Affirmative Defense (Doc. # 67); **DENIES** Plaintiffs' Motion for Extension of Time to Complete Discovery and Related Deadlines (Doc. # 68), **DENIES** Plaintiffs' Motion to Amend Complaint (Doc. # 69); **DENIES as MOOT** Defendant's Motion for Protective Order as to Plaintiffs' Written Discovery Requests (Doc. # 71), **DENIES as MOOT** Defendant's Motion for Sanctions (Doc. # 72), **GRANTS** Defendant's Motion for Summary Judgment (Doc. # 79), **DENIES** Plaintiffs' Motion to Extend Discovery (Doc. # 90), **DENIES as MOOT** Defendant's Motion to Exclude Plaintiffs' Witnesses and Exhibits Not Identified

or Produced in Discovery (Doc. # 101) and **DENIES as MOOT** Defendant's Motion to Amend/Correct Defendant's Final Witness List (Doc. # 108), **DENIES as MOOT** Plaintiffs' Motion in Limine (Doc. # 112), **DENIES as MOOT** Defendant's Motions in Limine (Doc. # 112, 115, 116, 117, 118), **DENIES as MOOT** Plaintiffs' Motion for Extension of Time to File Trial Brief (Doc. # 119) and **DENIES as MOOT** Plaintiffs' Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendant's Motion in Limine Out of Time (Doc. # 123).


Date: August 22, 2006                  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                                    United States District Judge